Opinion filed July 17, 2025



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00160-CV

_____

**TERRY HOLDEN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF ROSALIE M. HOLDEN, DECEASED, AND ON BEHALF OF ALL THOSE ENTITLED TO RECOVER FROM THE DEATH OF ROSALIE M. HOLDEN, DECEASED, Appellants**

### V.

### MESA SPRINGS HEALTHCARE CENTER, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 27826-B**

## M E M O R A N D U M   O P I N I O N

Rosalie Holden died on September 6, 2017, allegedly as a result of complications arising out of an incident that occurred while she was a resident at Forrest Hill Healthcare Center, Inc. d/b/a Mesa Springs Healthcare Center (Mesa

Springs). Terry Holden, who is Rosalie's son, filed suit against Mesa Springs, and Mesa Springs filed a motion to dismiss Terry's lawsuit under the Texas Medical Liability Act (TMLA). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–.552 (West 2017 & Supp. 2024). The trial court granted the motion to dismiss, and Terry now appeals, bringing a single issue asserting that the trial court erred by dismissing the case for his failure to comply with the expert report requirements of the TMLA. *See id.* § 74.351. We affirm the trial court's order of dismissal.

*Factual and Procedural Background*

In 2017, Rosalie Holden was a resident at Mesa Springs. Terry alleged that, on September 2, 2017, Rosalie was injured when she fell out of a wheelchair and onto the floor of the facility. Rosalie died four days later. Her death certificate identified the cause of death as respiratory failure and pneumonia.

Mesa Springs maintained that the incident occurred while Rosalie was being transported to a shower by a certified nurse's aide. Terry, on the other hand, made a variety of allegations regarding the circumstances that led to the fall, many of which were inconsistent.

In his original petition, Terry alleged that the incident occurred when a blanket got caught in the wheelchair, causing the wheelchair to abruptly stop and throwing Rosalie to the floor. Later, in his amended petition, Terry alleged in the alternative that the floor was uneven, that there were slippery liquids on the floor, and that there were objects on the floor that caused the fall. He also alleged that the injury occurred when "an employee of Mesa Springs got into an altercation," presumably, with Rosalie. The petition indicates that the employee then pushed Rosalie to the ground

2

or that, alternatively, she "hit Rosaline [sic] . . . with a blunt object, causing injury to her head, knee, neck[,] and nose."[1]

Finally, Terry alleged that the injury occurred when an employee "carelessly, recklessly, and very quickly pushed [Rosalie] through Mesa Spring[s] in a wheelchair." He claimed that the employee then "abruptly brought the wheelchair to a sudden stop, ejecting [Rosalie] from the wheelchair" or, alternatively, that "[t]he wheelchair abruptly stopped, ejecting [Rosalie] from the wheelchair."

The only evidence in the record that contains a description of the incident is the progress notes that were generated by Mesa Springs shortly thereafter. The notes indicate that, on the morning of September 2, a licensed vocational nurse heard a "thump" and then found Rosalie lying on the floor on her right side, bleeding from her forehead. The notes indicate that a certified nurse's aide (CNA) was at Rosalie's side at the time and that the CNA was reporting that Rosalie had fallen forward out of her wheelchair.

According to the notes, later, after Rosalie had returned from treatment at the emergency room, she was interviewed by another nurse. During the interview, Rosalie reportedly indicated that "her blanket got caught in the wheelchair . . . and the next thing she was on the floor." The same nurse also interviewed the CNA, who stated that "the blanket was not caught in the wheelchair" and that "the fall happened so fast she really didn't know exactly what happened." The CNA also appears to have indicated that "when she observed this resident she was actually lying on her right side on the floor just in front of her room."

On September 3, 2019, Terry filed his original petition in the trial court. In the petition, Terry alleged that Mesa Springs "had a duty to safely use a wheelchair

_____

[1]Although an alleged assault is described in Terry's pleadings, there is no evidence in the record to support this allegation.

to transport patients throughout its premises" and that Mesa Springs had "breached the standard of care for health care facilities," causing Rosalie's injuries and subsequent death.

Mesa Springs answered and—after several months—filed a motion for summary judgment. In its motion, Mesa Springs argued, in relevant part,[2] that the case should be dismissed because Terry failed to file a health care liability expert report with the trial court within 120 days of Mesa Springs's answer, as required by the TMLA. *See* CIV. PRAC. & REM. § 74.351(a).

While the motion for summary judgment was pending, Terry filed his first amended petition. In the amended petition, he asserted that Rosalie's injury and death resulted from allegedly dangerous conditions on the premises that were controlled by Mesa Springs. The amended petition also included claims based on alleged negligent activity and assault.

Terry also filed a response to the motion for summary judgment. In the response, he argued that, under the amended petition, all of his claims were "traditional tort claims" and that such claims were not subject to the TMLA.

On December 30, 2020, the Honorable Lee Hamilton, who was the presiding judge of the 104th District Court at that time, rendered a partial summary judgment. The order indicated that all claims under the TMLA were dismissed because "plaintiff did not timely serve an expert report," but stated that the court was making no rulings "with regard to the Plaintiff's First Amended Petition."

---

[2]Mesa Springs also argued that Terry's claims were barred by the two-year statute of limitations. CIV. PRAC. & REM. § 74.251(a). However, Mesa Springs does not raise this issue on appeal. In connection therewith, we note that, although the petition was filed two years and one day after the incident, September 2, 2019 was a state holiday. *See id.* § 16.072 (West 2015) ("If the last day of a limitations period . . . falls on a . . . holiday, the period for filing suit is extended to include the next day that the county offices are open for business.").

On December 20, 2021, Mesa Springs filed the motion to dismiss that is the subject of this appeal. Thereafter, on December 20, 2022, the Honorable Jeffrey Propst, who succeeded Judge Hamilton as the presiding judge of the 104th District Court, granted the motion. This appeal followed.

*The Issue*

In his sole issue on appeal, Terry complains that the trial court erred when it granted Mesa Springs's motion to dismiss. In connection therewith, Terry argues that: (1) the motion to dismiss was not timely filed, (2) the order of dismissal was inconsistent with the trial court's previous order denying Mesa Springs's motion for summary judgment, and (3) the order of dismissal was improper because his lawsuit is not a "health care liability claim," and is therefore not subject to the requirements of the TMLA.

*Statutory Construction*

The bulk of Terry's contentions on appeal are dependent on a construction of the TMLA. We review questions of statutory interpretation de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). "When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *see also* TEX. GOV'T CODE ANN. § 312.005 (West 2013).

We begin by examining the plain meaning of the statute's language. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389–90 (Tex. 2014). We derive legislative intent from the statute as a whole rather than from isolated portions of it. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). That is, we read statutes contextually to give effect to every word, clause, and sentence because every word and phrase is presumed to have been used intentionally, with a meaning and a purpose. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830,

838 (Tex. 2018). "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." GOV'T § 311.011; *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017).

"If the statute is clear and unambiguous, we must read the language according to its common meaning 'without resort to rules of construction or extrinsic aids.'" *Crosstex Energy Servs.*, 430 S.W.3d at 389 (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)); *but see* GOV'T § 311.023 (permitting courts to consider legislative history and other construction aids regardless of ambiguity). And if a statute is unambiguous, we adopt the interpretation that is supported by the statute's plain language unless such an interpretation would yield an absurd result. *TGS-NOPEC*, 340 S.W.3d at 439 (citing *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care*, 145 S.W.3d 170, 177 (Tex. 2004)). "A statute is ambiguous if its words are susceptible to two or more reasonable interpretations and we cannot discern legislative intent from the language alone." *Fort Worth Transp. Auth.*, 547 S.W.3d at 838.

### Was Mesa Springs's Motion to Dismiss Timely Filed?

The TMLA provides, in relevant part, that "a claimant shall, not later than the 120th day after the date each defendant's original answer is filed . . . serve on that party or the party's attorney one or more expert reports." CIV. PRAC. & REM. § 74.351(a). The report must provide "a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). This requirement is "meant to identify frivolous claims and reduce the expense and time to dispose" such claims. *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012).

6

After an expert report is filed, "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served." CIV. PRAC. & REM. § 74.351(a). Additionally, if no expert report is filed in connection with the liability of a health care provider, such provider may file a motion to dismiss the case with prejudice. *Id.* § 74.351(b).

In this case, it is undisputed that Terry has never filed an expert report in connection with Mesa Springs's liability. However, Terry argues that Mesa Springs has waived its right to file a motion to dismiss by failing to file the motion within twenty-one days after Terry's report was allegedly due.

Terry's argument conflates Mesa Springs's right to object to an *existing* expert report with its right to file a motion to dismiss based on the *absence* of a report. The former provision contemplates a waiver if the defendant fails to act within twenty-one days; the latter does not. *See Kim v. Ramos*, 632 S.W.3d 258, 266 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("There is no deadline to file a motion to dismiss for failure to timely serve a chapter 74 expert report." (citing *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003); *Owens v. Handyside*, 478 S.W.3d 172, 181 (Tex. App.—Houston [1st Dist.] Oct. 8, 2015, pet. denied))). Because the twenty-one-day limitation in Section 74.351(b) clearly and unambiguously applies only to objections to existing expert reports, we reject Terry's argument that Mesa Springs has waived its right to file a motion to dismiss under the statute.

Terry also argues that Mesa Springs's motion should be barred under the doctrine of laches. However, Terry did not raise the issue of laches in his response to Mesa Springs's motion to dismiss. As such, it has been waived. TEX. R. APP. P. 33.1(a).

Furthermore, the doctrine of laches is inapplicable under the circumstances of this case. Laches is an equitable doctrine that is similar to estoppel. *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964). It operates to bar a party from asserting a legal or equitable right where the party has unreasonably delayed in seeking redress. *Thompson v. Landry*, No. 23-0875, 2025 WL 1350003, at *5 n.34 (Tex. May 9, 2025). However, mere delay is not enough. *Id.* Instead, the delay must work to the disadvantage of another. *Id.* (citing *Culver v. Pickens*, 176 S.W.2d 167, 170 (Tex. 1943)). Thus, the elements of laches include: "(1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay." *Id.* at *5 (quoting *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989)).

As the party who asserts laches, Terry bears the burden of proof to establish that it is applicable. *See, e.g.*, *Johnson*, 388 S.W.2d at 403. In his brief, however, Terry does not point to any facts which show that he has made a good faith change in position as a result of Mesa Springs's delay in asserting its motion to dismiss. Accordingly, even if the issue were not waived, we would conclude that the doctrine of laches is inapplicable to Mesa Springs's motion.

*The Effect of the Partial Summary Judgment*

Terry argues that Judge Hamilton's order of December 30, 2020 "declined to dismiss [his] case on the basis that [he] had not filed an expert report." He then asserts that the subsequent order, which was signed by Judge Propst, is inconsistent with that ruling because it revisits the issue of whether his additional claims should be dismissed as a result of his failure to file a report.

Terry's argument misconstrues the previous order. By its express terms, the previous order does not dispose of any of the issues that are raised in Terry's

8

amended petition.  Rather, it merely dismisses the claims that were raised in the *original* petition as a result of Terry's failure to file an expert report.

Furthermore, even if Judge Propst's 2023 order "revisited" the issue of the applicability of the TMLA, as Terry argues, it would not have been improper.  At the time of the 2023 order, a final judgment had not yet been signed, and the trial court was exercising its ongoing jurisdiction over the case.  *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310 (Tex. 2000) ("A trial court retains jurisdiction over a case for a minimum of thirty days after signing a final judgment."); *see also* TEX. R. CIV. P. 329b(d) (providing plenary power to act on a final judgment within thirty days after the judgment is signed).  While exercising such jurisdiction, the trial court had "the inherent authority to change or modify an interlocutory order or judgment at any time before the judgment [became] final." *Note Inv. Group, Inc. v. Assocs. First Cap. Corp.*, 476 S.W.3d 463, 494 (Tex. App.—Beaumont 2015, no pet.); *see also H.S.M. Acquisitions, Inc. v. West*, 917 S.W.2d 872, 877 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) ("A trial court may, in the exercise of discretion, properly grant summary judgment after having previously denied summary judgment without a motion by or prior notice to the parties, as long as the court retains jurisdiction over the case.").  Accordingly, Judge Propst was free at any time to alter or vacate any previous orders that had been signed in the case.  *See Devon Energy Prod. Co., L.P. v. McClure Oil Co.*, Inc., No. 11-23-00083-CV, 2025 WL 1657598, at *15 (Tex. App.—Eastland June 12, 2025, no pet. h.).

### *Does Terry Assert a "Health Care Liability Claim" that is Subject to the TMLA?*

Terry also argues that the order of dismissal was improper because the claims in his amended petition were not health care liability claims, and that they were

therefore not subject to the TMLA. *See* Civ. Prac. & Rem. §§ 74.001(a)(13), 74.351(a).

The TMLA defines the phrase "[h]ealth care liability claim" as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13). This definition includes three elements:

(1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death.

*Loaisiga*, 379 S.W.3d at 255. In this instance, the parties clash over the second element of the definition: whether the claimant's cause of action "is for treatment, lack of treatment, or other claimed departure" from accepted standards of care. *Id.*

"Whether a claim is a health care liability claim under the Act is a question of law we review de novo." *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019); *Coci v. Dower*, 585 S.W.3d 652, 655 (Tex. App.—Eastland 2019, pet. denied). Furthermore, in answering the question, "we must focus on the claim's 'underlying nature . . . rather than its label.'" *Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 836 (Tex. 2022) (quoting *Weems*, 575 S.W.3d at 363). We therefore consider the entire record, "including 'the pleadings, motions and responses, and relevant evidence properly admitted.'" *Gaytan*, 640 S.W.3d at 836 (quoting *Loaisiga*, 379 S.W.3d at 258).

A lawsuit that is based on one set of facts cannot be divided into both a health care liability claim and a non-health care liability claim. *Yamada v. Friend*, 335

10

S.W.3d 192, 196–97 (Tex. 2010). Thus, where a claim is premised on a single set of facts that *could* qualify as a health care liability claim, the claim *will* qualify as a healthcare liability claim, regardless of whether the plaintiff alleges a violation of a professional or institutional standard of care. *Loaisiga*, 379 S.W.3d at 255.

"The broad language of the TMLA evidences legislative intent for the statute to have expansive application." *Id.* at 256. Thus, the statute "essentially creates a [rebuttable] presumption that a claim is [a health care liability claim] if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Id.*

Under these principles, "health care liability claims" generally include alleged injuries arising out of the transportation of an individual by wheelchair or walker by an individual who is employed by a health care facility. In *Collin Creek Assisted Living Ctr., Inc. v. Faber*, for example, a resident at a Type-B assisted living facility was injured while she was being transported along a sidewalk by an employee of the facility. 671 S.W.3d 879, 884, 893 (Tex. 2023). The resident subsequently died as a result of the injuries. *Id.* After the resident's daughter filed suit, the facility filed a motion to dismiss under the TMLA based on the daughter's failure to serve an expert report within the required period. *Id.* Faber then attempted to amend her pleadings, removing all references to the employee and articulating a claim based solely on a theory of premises liability. *Id.*

In affirming the trial court's order of dismissal, the supreme court held that, regardless of whether the claim involves health care standards that implicate safety, safety standards with a "direct" relationship to health care and/or safety standards with a "substantive nexus" to the provision of health care, the same factors should be considered by the court. *Id.* at 887–88. Those factors are:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; [and]

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.* at 888 (quoting *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 505 (Tex. 2015)). The court then determined that it was "not limited to the negligent conduct alleged in the plaintiff's live petition," and that the daughter's cause of action against the facility qualified as a health care liability claim. *Id.* at 889. Among other things, the court's decision was influenced by evidence that the injury occurred as a result of transport of a patient who needed "standby assistance" (factor 1), evidence that the injury occurred on premises where the patient ordinarily received care (factor 2), the standard of care at issue, which arose out of the facility's professional duties (factor 5), evidence that the rolling walker in use at the time of the incident was of a type that was used in providing care (factor 6), and evidence that the alleged premises defect (a crack in the sidewalk) was in violation of regulations that are imposed on health care providers (factor 7). *Id.* at 891–95; 26 TEX. ADMIN. CODE

§ 553.103(d)(1) (2025) (Tex. Health & Hum. Servs. Comm'n, Site and Location for all Assisted Living Facilities) ("An assisted living facility must ensure a . . . walk . . . is uniform, without irregularities.").

The supreme court's holding in *Faber* was generally consistent with previous holdings by courts of appeals addressing similar issues involving the transfer of patients to or from a wheelchair. *See, e.g.*, *Valley Baptist Med. Ctr. v. Azua*, 198 S.W.3d 810, 814 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.) (dialysis patient transferring to wheelchair); *Fresenius Med. Care of Brownsville v. Garcia*, No. 13-08-00320-CV, 2010 WL 1804967, at *2 (Tex. App.—Corpus Christi–Edinburg May 6, 2010, no pet.) (mem. op.) (wheelchair transfer of dialysis patient); *Outpatient Ctr. For Interventional Pain Mgmt., P.A. v. Garza*, No. 13-07-00411-CV, 2008 WL 2525609, at *3 (Tex. App.—Corpus Christi–Edinburg June 26, 2008, no pet.) (mem. op.) (injury resulted from alleged failure to lock and secure wheelchair before patient was seated); *Belcher v. Scott & White Clinic*, No. 10-05-00324-CV, 2006 WL 2067981, at *1 (Tex. App.—Waco July 26, 2006, no pet.) (mem. op.) (patient injured while transferring from wheelchair).

In this instance, the facts and pleadings consistently indicate that Rosalie was injured in a hallway at Mesa Springs when she fell to the ground. The injury occurred while a Mesa Springs employee was transporting her in a wheelchair. We see nothing that overcomes the presumption that these facts should give rise to a health care liability claim. *See Loaisiga*, 379 S.W.3d at 256. At the time of the incident, the employee was transporting Rosalie so that she would not harm herself by attempting to ambulate herself (factor 1), the injury occurred in a location (the hallway of the facility) where health care is routinely provided (factor 2), and the injury occurred while Rosalie was receiving care from the facility (factor 3). Likewise, the injury involves professional and safety standards that are imposed on

13

Mesa Springs (factors 5 and 7). *See, e.g.*, 26 TEX. ADMIN. CODE § 554.326(w)(1) (2025) (Tex. Health & Hum. Servs. Comm'n, Safety Operations) ("Floors of the facility must be level, smooth, and free of any irregularities that might affect safety."); *Id.* § 554.1701 (2025) (Tex. Health & Hum. Servs. Comm'n, Physical Environment) (Nursing facilities "must be designed, constructed, equipped, and maintained to protect the health and ensure the safety of residents.").

Based on our examination of the record as a whole, we conclude that Terry's lawsuit against Mesa Springs can and does, in fact, qualify as a health care liability claim.

We overrule Terry's sole issue on appeal.

*Disposition*

Terry maintains that, if we determine that he has failed to timely file an expert report, we should remand the case to the trial court so that the trial court can provide him with a second opportunity to file the report. In support of this argument, Terry points to Section 74.353 of the TMLA. Under this section, a claimant may file a motion "not later than 30 days" after a defendant files its original answer seeking a "preliminary determination" regarding whether the claimant has asserted a health care liability claim. CIV. PRAC. & REM. § 74.353(a).

Section 74.353 is an amendment to the TMLA, and it applies only to actions that were commenced on or after September 1, 2021. Act of May 13, 2021, 87th Leg., R.S., ch. 167, §§ 3–5, 2021 Tex. Gen. Laws 354, 356. All other cases are "governed by the law as it existed immediately before" September 1. *Id.* § 4.

Terry's lawsuit was filed on September 3, 2019, almost two years before Section 74.353 became effective. Furthermore, the record does not indicate that Terry made a request to the trial court for a "preliminary determination" on the

question of whether he has asserted a health care liability claim, even after the amendment became effective. As such, Section 74.353 is inapplicable.

Because the amendment in Section 74.353 is inapplicable, we conclude that there is no basis on which we can or should remand this case for the purpose of providing Terry with a second opportunity to file an expert report.

*This Court's Ruling*

We affirm the trial court's order of dismissal.


JOHN M. BAILEY

CHIEF JUSTICE


July 17, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.